[No. A064401. First Dist., Div. Two. Mar. 9, 1995.]

CHAD LEIBERT, Plaintiff and Appellant, v.
TRANSWORLD SYSTEMS, INC., et al., Defendants and Respondents.

**COUNSEL**

Paul Fred Wotman and Gary R. Cloutier for Plaintiff and Appellant.

Pat Shiu and Matthew A. Coles as Amici Curiae on behalf of Plaintiff and Appellant.

Anderson, Zeigler, Disharoon, Gallager & Gary and Christopher M. Mazzia for Defendants and Respondents.

## Opinion

## HAERLE, J.—

### I. Introduction

Appellant brought a civil action against respondent, his former employer, in which he based various causes of action on the allegation that respondent harassed and terminated him on the basis of his sexual orientation. In response to numerous pretrial motions, the trial court dismissed all of appellant's causes of action. On appeal, appellant seeks reinstatement of four claims: (1) violation of Labor Code sections 1101, 1102, and 1102.1;[1] (2) violation of the state constitutional right to privacy; (3) wrongful termination in violation of public policy; and (4) intentional infliction of emotional distress.[2] We affirm the trial court rulings with respect to claims 1 and 2 and reverse with respect to claims 3 and 4.

### II. Factual Background

Three of the four causes of action relevant to this appeal were decided on demurrer or judgment on the pleadings. For purposes of considering these claims, we accept all well-pleaded facts as true. (E.g., *Livitsanos* v. *Superior Court* (1992) 2 Cal.4th 744, 747 [7 Cal.Rptr.2d 808, 828 P.2d 1195]; *O'Neil* v. *General Security Corp.* (1992) 4 Cal.App.4th 587, 594, fn. 1 [5 Cal.Rptr.2d 712].) For reasons that will be explained, *post,* the appeal from the summary judgment is resolved on procedural grounds and therefore the undisputed facts relating to that motion need not be revisited here.

Although the complaint in this matter was amended several times, the pertinent factual allegations remained consistent throughout: On or about April 4, 1991, appellant was hired by respondent to be a collection specialist in its Rohnert Park office. During the course of appellant's employment, respondent learned that appellant was a homosexual. Subsequently, co-workers and managerial employees referred to appellant as a "fag." His supervisor portrayed him in an "effeminate manner." On or about May 7, 1991, a vice-president of respondent met with another employee and instructed him to "keep a close watch on [appellant] and that any mistake by [appellant] would result in [appellant's] immediate termination because 'I do not need a fag working for me in this office.'" Appellant was, he contends,

---

[1]All further statutory references are to the Labor Code unless otherwise indicated.

[2]Appellant does not appeal from the order sustaining without leave to amend the demurrer to his cause of action for negligent infliction of emotional distress and the summary judgment on his breach of implied contract claim.

terminated without good cause on or about August 15, 1991. Appellant alleges that his sexual orientation was the reason for his discharge.

### III. DISCUSSION

#### A. *Cause of Action for Violation of Sections 1101, 1102, and 1102.1*

█ Appellant's first amended complaint alleged a cause of action for violations of sections 1101, 1102, 1102.1 which, together, prohibit discrimination on the basis of sexual orientation. (*Delaney* v. *Superior Fast Freight* (1993) 14 Cal.App.4th 590, 595-596 [18 Cal.Rptr.2d 33].) Appellant alleged neither exhaustion of, unavailability of, nor futility of administrative remedies. Respondent demurred to this claim on the ground that appellant was required to allege exhaustion of administrative remedies. The trial court agreed and sustained the demurrer with leave to amend.

Subsequently, appellant filed a second amended complaint in which he restated his Labor Code action, specifically alleging that he "had exhausted all available administrative remedies." Respondent moved for summary judgment on the ground that the undisputed facts showed that appellant had failed to exhaust *any* administrative remedies; in fact, appellant, at the time of his deposition, had not made any administrative claim at all. In response, appellant asserted that (a) exhaustion of administrative remedies was not required and (b) no administrative remedies were available at the relevant time. The hearing on the motion focused principally on appellant's latter argument. The trial court granted summary judgment in favor of respondent. We uphold the trial court's ruling.

As previously noted, the trial court sustained the demurrer to appellant's first amended complaint on the ground that appellant failed to plead exhaustion of administrative remedies. In the face of this ruling, appellant availed himself of the option of amending his complaint to allege exhaustion, rather than seeking reconsideration of the ruling or standing on his pleading. By electing to amend his complaint, appellant waived any error in the ruling sustaining the demurrer, including the ruling that exhaustion of administrative remedies was an element of his claim. (E.g., *Aubry* v. *Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966, fn. 2 [9 Cal.Rptr.2d 92, 831 P.2d 317]; *Anmaco, Inc.* v. *Bohlken* (1993) 13 Cal.App.4th 891, 900 [16 Cal.Rptr.2d

675]; *Sheehy* v. *Roman Catholic Archbishop* (1942) 49 Cal.App.2d 537, 540-541 [122 P.2d 60].)[3]

Appellant's renewal, in opposition to respondent's summary judgment motion, of his argument that exhaustion of administrative remedies was not a prerequisite to his cause of action does not obviate the impact of the *Sheehy* waiver rule. At best, appellant was simply making a belated, "back-door" request for reconsideration of the court's ruling on the demurrer, a request the trial court was not authorized to entertain. (Code Civ. Proc., § 1008; cf. *Curtin* v. *Koskey* (1991) 231 Cal.App.3d 873, 878 [282 Cal.Rptr. 706] [regardless of motion's title, to the extent it raises the same issues previously ruled upon, it is a motion for reconsideration].) As such, the issue was not properly injected into the summary judgment proceedings and, therefore, was not resurrected for purposes of appellate review.[4]

Neither could appellant's other, and principal, line of defense to the summary judgment motion, i.e., the "unavailability" of administrative remedies, defeat respondent's summary judgment motion. First, appellant's argument was again irrelevant in light of the amendment to his complaint, in which he pleaded exhaustion of administrative remedies, not the futility of pursuing them. (*FPI Development, Inc.* v. *Nakashima* (1991) 231 Cal.App.3d 367, 381-382 [282 Cal.Rptr. 508] [pleadings serve as the outer measure of materiality in a summary judgment motion]; *580 Folsom Associates* v. *Prometheus Development Co.* (1990) 223 Cal.App.3d 1, 18-19 [272 Cal.Rptr. 227] [respondent only required to defeat allegations reasonably contained in the complaint].) If appellant wished to rely upon unpleaded theories to defeat summary judgment, he was required to move to amend the complaint prior to the hearing on respondent's motion. (E.g., *580 Folsom Associates* v. *Prometheus Development Co., supra*, 223 Cal.App.3d at p. 18.)

Second, even assuming that the amended complaint possibly could be construed to raise the issue of the futility of pursuing administrative remedies, respondent was still entitled to summary judgment. (Code Civ. Proc., § 437c, subd. (o)(2).) All of the evidence produced by appellant in opposition to the motion was either inadmissible or not the proper subject of judicial notice, and the trial court correctly so ruled.

---

[3] We are unpersuaded by appellant's argument that waiver does not apply in this case because the trial court coerced him into alleging exhaustion of administrative remedies. Appellant demonstrates nothing more coercive than an adverse ruling, which is also present in other cases applying the waiver rule in the demurrer context.

[4] At oral argument, appellant's counsel suggested that, in granting respondent's summary judgment motion, the trial court "necessarily ruled" that exhaustion of administrative remedies was required. Appellant cannot shift this burden so easily; it was *he* who affirmatively pleaded "exhaustion" in the second amended complaint, thus implicitly conceding the necessity therefor.

Appellant supported its opposition with declarations from appellant , appellant's attorney, and a request for judicial notice of (a) two "facts" and (b) an unauthenticated, internal memorandum purportedly authored by James H. Curry, Deputy Chief, California Department of Industrial Relations, which was attached to the attorney's declaration. The facts that the court was requested to judicially notice were (1) the Labor Commissioner did not accept complaints for employment discrimination based upon sexual orientation until more than 30 days after appellant's discharge and (2) the Labor Commissioner opines that the filing of a complaint with him is not a condition precedent to a civil lawsuit based upon such discrimination. These facts purportedly were established by the unauthenticated internal memorandum and the hearsay statements contained in the declarations.

Pursuant to Evidence Code section 453, judicial notice is compulsory only when a party requests it and "[f]urnishes the court with sufficient information to enable it to take judicial notice of the matter[s]." "[T]he decision of the [trial] judge not to take judicial notice will be upheld on appeal unless the reviewing court determines that the party furnished information to the judge that was so persuasive that no reasonable judge would have refused to take judicial notice of the matter." (Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (1966 ed.) § 453, pp. 413-415; accord, *Willis* v. *State of California* (1994) 22 Cal.App.4th 287, 291 [27 Cal.Rptr.2d 413].) Mere secondhand reports of conversations with employees of the Division of Labor Standards and unauthenticated internal documents of the division did not satisfy appellant's burden. (Cf. *Whispering Pines Mobile Home Park, Ltd.* v. *City of Scotts Valley* (1986) 180 Cal.App.3d 152, 162 [225 Cal.Rptr. 364] [declining to take judicial notice on appeal due to failure to demonstrate texts containing information were "sources of reasonably indisputable accuracy"].) For this same reason, we decline appellant's request to exercise our discretion under Evidence Code section 459 to take judicial notice on appeal of these matters. (180 Cal.App.3d at p. 162.)

We therefore conclude that the trial court did not err by granting respondent summary judgment on appellant's cause of action for violations of sections 1101, 1102, 1102.1.

B. *Cause of Action for Violation of Privacy*

██ Appellant next contends that the trial court erred in sustaining without leave to amend respondent's third demurrer to his cause of action for invasion of privacy. The gravamen of appellant's cause of action was that his state constitutional right to privacy was violated when respondent used information about his sexual orientation as grounds to terminate his employment. Appellant specifically alleged that the information misused by respondent "was not improperly obtained and not confidential."

In reviewing an order sustaining a demurrer, "[w]e treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]; accord, *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) "[W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable probability that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citation.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank* v. *Kirwan*, *supra*, 39 Cal.3d at p. 318.)

■ Our Supreme Court has recently held that ". . . a plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." (*Hill* v. *National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 39-40 [26 Cal.Rptr.2d 834, 865 P.2d 633] (hereafter *Hill*).) ■ Although respondent's alleged actions of harassing and terminating appellant on the basis of his sexual orientation were undoubtedly legally actionable and, if true, unconscionable, we conclude that appellant failed to adequately plead facts to support the first element of his privacy cause of action: the existence of a legally protected privacy interest.

■ Our starting point is the recent instruction of our Supreme Court that "[l]egally recognized privacy interests are generally of two classes: (1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')." (*Hill*, *supra*, 7 Cal.4th at p. 35.) "Whether a legally recognized privacy interest is present in a given case is a question of law to be decided by the court. [Citation.]" (*Id.* at p. 40.) Appellant contends on appeal that respondent violated both types of privacy interests.

■ As respondent urges, however, appellant's complaint does not support his claim. We agree that "the details of one's personal life," including sexuality, generally fall within a protected zone of privacy. (See *Davis* v.

*Superior Court* (1992) 7 Cal.App.4th 1008, 1019 [9 Cal.Rptr.2d 331].) Nevertheless appellant specifically alleged that his sexual orientation was not confidential. Therefore, appellant, as a matter of law, cannot state a claim for infringement of a legally protected *informational* privacy interest. (*Hill, supra,* 7 Cal.4th at p. 40.)

Second, although appellant contends on appeal that respondent's alleged discriminatory conduct infringed his *autonomy* privacy interest, the allegations of his second amended complaint do not reasonably embrace this theory. In discussing the autonomy privacy interest, our Supreme Court has specifically recognized that the state constitutional right of privacy was not intended "to create any unbridled right of personal freedom of action that may be vindicated in lawsuits against either government agencies or private persons or entities." (*Hill, supra,* 7 Cal.4th at p. 36.) In support of its conclusion, the court observed that the ballot arguments on this subject "refer to the federal constitutional tradition of safeguarding certain intimate and personal decisions from government interference in the form of penal and regulatory laws. [Citation.]" (*Ibid.*) As noted above, giving appellant's complaint a reasonable reading, he alleged that respondent harassed and discharged him because of his sexual orientation or, in other words, his status as a homosexual. Although deplorable if true, we do not believe that respondent's alleged conduct amounts to an "intrusion," "observation" or "interference" with the making of "intimate personal decisions" or the conduct of "personal activities" of the type protected by the state constitutional right to privacy. (*Id.* at p. 35.)

We therefore conclude that the trial court did not err in sustaining the demurrer to this cause of action without leave to amend.

## C. *Cause of Action for Wrongful Discharge in Violation of Public Policy*

 Appellant further contends that the trial court erred in granting respondent judgment on the pleadings on his claim for wrongful termination in violation of public policy (hereinafter sometimes *Tameny*[5] claim). Appellant's *Tameny* claim alleged that respondent's conduct violated the public policies expressed in sections 1101, 1102, 1102.1 and the state constitutional right to privacy contained in article I, section 1 of the California Constitution. In its motion for judgment on the pleadings, respondent argued that appellant could not state a *Tameny* claim when the trial court had previously removed from the case direct causes of action brought pursuant to the statutory and constitutional provisions relied upon by appellant to support that claim.

---

[5]*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330].

We review an order granting a motion for judgment on the pleadings under the standards applicable to reviewing an order sustaining a general demurrer, which are set forth, *ante*, at page 1698. (E.g., *O'Neil* v. *General Security Corp.*, *supra*, 4 Cal.App.4th at p. 594, fn. 1.) We begin our review here by considering the adequacy of appellant's first theory supporting his *Tameny* claim: violation of the enumerated Labor Code sections. We conclude that appellant's claim remains viable notwithstanding the dismissal of his direct action premised on those statutes. Because we uphold appellant's cause of action on this first theory, we do not reach the question of whether the cause of action can be upheld on plaintiff's alternative, constitutional, theory also.

Initially, we observe that respondent did not challenge this cause of action in the trial court on the ground that sections 1101, 1102, and 1102.1 fail to state a fundamental public policy of this state against employment discrimination and harassment based upon sexual orientation sufficient to sustain a *Tameny* claim. (See *Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083, 1095 [4 Cal.Rptr.2d 874, 824 P.2d 680] [hereafter *Gantt*] [clarifying sources of public policy to support *Tameny* claim].) In fact, respondent's counsel expressly conceded this point at oral argument. Such a concession is both warranted and appropriate: discrimination on the basis of sexual orientation is outlawed under the prohibitions on discrimination on the basis of political activities or affiliations found in sections 1101 and 1102. (*Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 488 [156 Cal.Rptr. 14, 595 P.2d 592] [statutes protect manifest homosexuals]; 69 Ops.Cal.Atty.Gen. 80 (1986) [statutes protect employees from discrimination on the basis of undisclosed or suspected homosexual orientation]; *Delaney* v. *Superior Fast Freight*, *supra*, 14 Cal.App.4th at pp. 595-596 [tracing history of prohibition against discrimination on basis of sexual orientation]; Dickey, *Reorienting the Workplace: Examining California's New Labor Code Section 1102.1 and Other Legal Protections Against Employment Discrimination Based on Sexual Orientation* (1993) 66 So.Cal.L.Rev. 2297, 2299-2306 (hereafter *Reorienting the Workplace*) [same].)

Section 1102.1, effective January 1, 1993, provides in relevant part: "(a) Sections 1101 and 1102 prohibit discrimination or different treatment in any aspect of employment or opportunity for employment based on actual or perceived sexual orientation." The Legislature specifically declared that the law "codifies existing law and practice . . . ." (Historical Note, 44 West's Ann. Lab. Code (1995 pocket supp.) § 1102.1, p. 68, quoting § 1 of Stats. 1992, ch. 915 (Assem. Bill No. 2601).) Given this history, we conclude that the fundamental public policy against discrimination on the basis of sexual orientation was adequately expressed in the statutes of this state to meet the

requirements set forth in *Gantt* at the time relevant to this suit. (Cf. *GTE Sprint Communications Corp.* v. *State Bd. of Equalization* (1991) 1 Cal.App.4th 827, 833 [2 Cal.Rptr.2d 441] ["Where a statute or amendment clarifies existing law, such action is not considered a change because it merely restates the law as it was at the time, and retroactivity is not involved. [Citation.]"]; see also *Bowen* v. *Board of Retirement* (1986) 42 Cal.3d 572, 575, fn. 3 [229 Cal.Rptr. 814, 724 P.2d 500]; *Hoffman* v. *Board of Retirement* (1986) 42 Cal.3d 590, 593 [229 Cal.Rptr. 825, 724 P.2d 511].)

The issue before us then is whether appellant's cause of action remains viable notwithstanding the dismissal of his direct Labor Code cause of action for failure to exhaust administrative remedies. Given the procedural posture of this case (see, *ante*, p. 1698), we are not called upon to decide whether exhaustion of the Labor Code administrative remedies is in fact a precondition to bringing a direct statutory cause of action.[6] Rather, we confine our review to the question of whether an aggrieved employee must exhaust administrative remedies prior to bringing a *nonstatutory* claim. This question implicates not only exhaustion, but also exclusivity, of the administrative remedies provided in the Labor Code.

Sections 1101, 1102, 1102.1 are silent regarding administrative remedies. Section 98.7, a more recent addition to the Labor Code, provides: "[a]ny person who believes that he or she has been discharged or otherwise discriminated against in violation of any provision of this code under the jurisdiction of the Labor Commissioner *may* file a complaint with the division [Division of Labor Standards Enforcement]. . . ." (§ 98.7, subd. (a), italics added.) The section outlines a process of investigation and decision by the Labor Commissioner. Of particular import to the present case, subdivision (f) states: "The rights and remedies provided by this section do not preclude an employee from pursuing any other rights and remedies under any other provisions of law."

In light of the clear statutory language, respondent apparently concedes that the section 98.7 administrative remedies are not exclusive and that, generally, exhaustion of these remedies is not required before instituting a civil suit alleging certain nonstatutory claims. Respondent's concessions are again warranted. (See 1 Wilcox, California Employment Law (1994) §§ 5.51, 40.12A[2]; Cadell, *Enforcing the New Sexual Orientation Discrimination Law* (July/Aug. 1993) L.A. Lawyer pp. 22, 29, 40[7]; *Reorienting the Workplace, supra*, 66 So.Cal.L.Rev. at p. 2307.) Relying upon *Rojo* v. *Kliger*

---

[6]We observe that the bulk of the parties' briefing in fact addressed this issue.

[7]The author of the cited article is the chief counsel of the Division of Labor Standards Enforcement, the administrative agency charged with enforcing section 98.7.

(1990) 52 Cal.3d 65 [276 Cal.Rptr. 130, 801 P.2d 373] (hereafter *Rojo*), respondent nevertheless asserts (and the trial court implicitly concluded) that at least one type of nonstatutory claim is precluded by failure to exhaust section 98.7 administrative remedies, i.e., a *Tameny* claim supported by a fundamental public policy found exclusively in the Labor Code. We agree that *Rojo* is instructive, but conclude respondent simply reads that case incorrectly.

In *Rojo* two women brought a suit against their employer for sexual harassment alleging causes of action under the Fair Employment and Housing Act (hereafter FEHA) (Gov. Code § 12900 et seq.) and common law theories. The trial court granted summary judgment for the employer on the ground that the plaintiffs had not exhausted their administrative remedies under FEHA prior to filing their suit. The Supreme Court held that: (1) FEHA does not preempt other causes of action and remedies available to the plaintiffs (*Rojo*, *supra*, 52 Cal.3d at p. 82); (2) plaintiffs are not required to exhaust FEHA administrative remedies prior to pursuing nonstatutory claims (*id.* at p. 88); and (3) a *Tameny* claim can be premised upon the fundamental public policy against sexual discrimination in the workplace found in article I, section 8, of the state Constitution (52 Cal.3d at p. 90-91).

Respondent's argument is premised on the fact that, although the *Rojo* plaintiffs' *Tameny* claim was upheld, the claim was based upon a ground independent of FEHA, the administrative remedies pertaining to which the plaintiffs failed to exhaust. We do not find this portion of the *Rojo* decision to mandate the result urged by respondent. The *Rojo* court simply did not consider whether the public policy requisite for plaintiffs' *Tameny* claim could be found in FEHA. The wording of the opinion leads to the conclusion that the issue was not raised. (*Rojo*, *supra*, 52 Cal.3d at p. 89.)

The *Rojo* court did, however, consider at length (albeit in the context of FEHA rather than the Labor Code) whether failure to exhaust administrative remedies should bar *nonstatutory* causes of action. The *Rojo* court concluded that the exhaustion doctrine did not apply because none of the policy considerations underlying the exhaustion doctrine were furthered by its application. (*Rojo*, *supra*, 52 Cal.3d at pp. 86-88.) The *Rojo* court specifically concluded that "these are not cases having such a paramount need for specialized agency fact-finding expertise as to require exhaustion of administrative remedies before permitting an aggrieved person to pursue his or her *related nonstatutory claims and remedies* in court." (*Id.* at p. 88, italics added.) Since the administrative remedies provided under FEHA and the Labor Code are "quite similar" (*Reorienting the Workplace*, *supra*, 66 So.Cal.L.Rev. at p. 2309), we find no reason to depart from the *Rojo* court's analysis on this point.

We conclude that appellant's *Tameny* claim, premised as it is upon violation of sections 1101, 1102, 1102.1, is not barred for failure to exhaust administrative remedies. It is well established that a *Tameny* claim is a nonstatutory, common law claim sounding in tort. (See, e.g., *Gantt, supra*, 1 Cal.4th at p. 1098.) The *Tameny* cause of action " 'reflects a duty imposed by law upon all employers in order to implement the fundamental public policies [of this state] . . . .' " (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 668 [254 Cal.Rptr. 211, 765 P.2d 373], quoting *Tameny, supra*, 27 Cal.3d at p. 176.) In our view, the rationale of the *Tameny* claim would be undermined if a violation of a fundamental public policy of the state had to remain unredressed simply because a plaintiff failed to pursue nonexclusive administrative remedies. Respondent advances no reason, and we discern none (other than possible economic and public policy concerns more appropriately left to the Legislature), why this nonstatutory, tort cause of action should be treated differently than other nonstatutory claims for purposes of application of the exhaustion doctrine.[8]

We therefore conclude that appellant stated a viable *Tameny* claim and that the trial court erred in granting judgment on the pleadings in favor of respondent.

## D. *Cause of Action for Intentional Infliction of Emotional Distress*

■ Finally, appellant argues that the trial court erred in sustaining without leave to amend the demurrer to his cause of action for intentional infliction of emotional distress on the ground that the workers' compensation laws provide the exclusive remedy. We agree.

Appellant's emotional distress claim is premised upon the same alleged actions of his employer that support his *Tameny* claim.[9] As explained above, these alleged actions constitute discrimination in violation of a fundamental public policy of this state. Such misconduct lies outside of the exclusive

---

[8]We note that our decision herein is in no way contrary to the Supreme Court's recent decision in *Jennings* v. *Marralle* (1994) 8 Cal.4th 121 [32 Cal.Rptr.2d 275, 876 P.2d 1074]. In that case, the Supreme Court held that plaintiff's *Tameny* claim, premised upon violation of public policy against age discrimination set forth in FEHA, should be dismissed. The court concluded that, since FEHA specifically restricts liability to employers of five or more persons, the Legislature did not intend to make the right to be free of age discrimination by small employers a fundamental public policy. In the present case, however, respondent was not exempt from the public policy in question and therefore it would not be "unreasonable to expect" that respondent realized that it "must comply with the law from which they are exempted under pain of possible tort liability." (*Id.* at pp. 135-136.)

[9]We reject respondent's disingenuous attempt to recast appellant's claim exclusively in terms of "name calling." Appellant alleges that he was harassed and subsequently terminated on grounds that violate a fundamental public policy of this state: sexual orientation.

remedy provisions of the Labor Code. (E.g., *Gantt, supra*, 1 Cal.4th at p. 1092; *Livitsanos* v. *Superior Court, supra*, 2 Cal.4th at pp. 754, 755-756; *Fermino* v. *Fedco, Inc.* (1994) 7 Cal.4th 701, 713-715 [30 Cal.Rptr.2d 18, 872 P.2d 559]; *Accardi* v. *Superior Court* (1993) 17 Cal.App.4th 341, 352-353 [21 Cal.Rptr.2d 292].)[10] Accordingly, the trial court erred in sustaining the demurrer.

## IV. DISPOSITION

Employment discrimination, whether based upon sex, race, religion or sexual orientation, is invidious and violates a fundamental public policy of this state. Appellant alleges that he suffered discrimination based upon his sexual orientation. We conclude that he stated viable claims for wrongful discharge in violation of public policy and intentional infliction of emotional distress. Accordingly, we reverse the trial court orders (1) granting respondent judgment on the pleadings on the wrongful discharge claim and (2) sustaining the demurrer to the emotional distress claim. For reasons set forth herein, however, we affirm the trial court orders (1) sustaining summary judgment in favor of respondent on the Labor Code cause of action and (2) sustaining the demurrer to the state constitutional privacy claim.

Kline, P. J., and Phelan, J., concurred.

---

[10]Respondent's reliance upon *Goldman* v. *Wilsey Foods, Inc.* (1989) 216 Cal.App.3d 1085 [265 Cal.Rptr. 294] and *Davaris* v. *Cubaleski* (1993) 12 Cal.App.4th 1583 [16 Cal.Rptr.2d 330] is unavailing. First, *Goldman* was decided prior to the recent Supreme Court decisions cited above. Second, in *Davaris,* the court concluded, in contrast to the present case, that the employer's actions did not violate a fundamental public policy of the state; therefore, workers' compensation laws did provide the exclusive remedy for the plaintiff's emotional distress claim. Thus, *Davaris* is both factually distinguishable and legally consistent with our holding and the holdings of the cases upon which we rely.